UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| INTELECOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| DOMONIC MONGELLO, SIGMA | ) | **1: 08-cv-0420-SEB-JMS** |
| SECURITIES, INC., SIGMA TRUST, | ) | |
| SWISS INDEPENDENT TRUSTEES, | ) | |
| S.A., WHITE LABEL, LLC, GRANT | ) | |
| FITZGERALD GALLOWAY, F.G. | ) | |
| MANAGEMENT, INC., NATIONAL | ) | |
| SECURITIES, SCOTTRADE, | ) | |
| SCOTTSDALE CAPITAL ADVISORS, | ) | |
| and FLORIDA ATLANTIC STOCK | ) | |
| TRANSFER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

InteleCom, Inc. ("InteleCom"), by counsel, Lewis & Kappes, P.C., for its complaint against Domonic Mongello ("Mr. Mongello"), Sigma Securities, Inc. ("SSI"), Sigma Trust, Swiss Independent Trustees, S.A. ("Swiss Trustees"), White Label, LLC ("White Label"), Grant Fitzgerald Galloway ("Mr. Galloway"), F.G. Management, Inc. ("F.G. Management"), National Securities, Scottrade, Scottsdale Capital Advisors ("Scottsdale Capital"), and Florida Atlantic Stock Transfer Company ("Florida Atlantic") hereby state and allege:

### The Parties, Jurisdiction and Venue

1.    InteleCom is a Nevada corporation with its principal place of business in Indianapolis, Indiana.

2.      Domonic Mongello is an individual U.S. citizen with a last known address in California who is believed to reside in Thailand. This Court has specific personal jurisdiction over Mr. Mongello based on his conduct in this case which is set forth in more detail below.

3.      Sigma Securities, Inc., upon information and belief, is a British Virgin Islands corporation. This Court has specific personal jurisdiction over SSI based on its conduct in this case which is set forth in more detail below.

4.      Sigma Trust is a discretionary trust organized under the laws of Jersey under a trust agreement dated July 26, 2004 with a principal address in Geneva, Switzerland. This Court has specific personal jurisdiction over Sigma Trust based on its conduct in this case which is set forth in more detail below.

5.      Swiss Independent Trustees, S.A. is organized under the laws of Switzerland with a principal address in Geneva, Switzerland. Swiss Independent Trustees is the trustee for Sigma Trust with the power to vote and direct the disposition of Shares held directly or indirectly by the Trust.   This Court has specific personal jurisdiction over Swiss Independent Trustees based on its conduct in this case which is set forth in more detail below.

6.      White Label, LLC, upon information and belief, is a company owned by Mr. Mongello and Billy Bateman. Its domiciliary is unknown and its primary place of business is 10033 S. Ross Avenue, Oklahoma City, OK 73159. This Court has specific personal jurisdiction over White Label based on its conduct in this case which is set forth in more detail below.

7.    Grant Fitzgerald Galloway is an individual with a last known address in California. This Court has specific personal jurisdiction over Mr. Galloway based on his conduct in this case which is set forth in more detail below.

8.    F.G. Management, upon information and belief, is owned by Mr. Galloway. Its domiciliary is unknown at this time. This Court has specific personal jurisdiction over F.G. Management based on its conduct in this case which is set forth in more detail below.

9.    National Securities is a Washington Corporation that is an affiliate of National Holdings Corporation, a Delaware corporation. National Securities is registered to do business in Indiana. This Court has general personal jurisdiction over National Securities. National Securities is named as a Defendant herein only to the extent it has an interest in this action and this Court directs it take any action regarding the stock that is the subject of this dispute.

10.   Scottrade is a financial institution with its headquarters in St. Louis, Missouri. Scottrade does general business in the Southern District of Indiana. Scottrade is named as a Defendant herein only to the extent it has an interest in this action and this Court directs it take any action regarding the stock that is the subject of this dispute.

11.   Scottsdale Capital Advisors is an Arizona Corporation with its principal place of business in Scottsdale, Arizona. Upon information and belief, Scottsdale Capital does business in the Southern District of Indiana. Scottsdale Capital is named as a Defendant herein only to the extent it has an interest in this action and this Court directs it take any action regarding the stock that is the subject of this dispute.

12.     Florida Atlantic Stock Transfer Company is a Florida Corporation doing business in Indiana.  Florida Atlantic is InteleCom's transfer agent and is named as a Defendant herein only to the extent it has an interest in this action and this Court directs it take any action regarding the stock that is the subject of this dispute.

13.     This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332.  The amount in controversy in this case exceeds $75,000.00.

14.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a)(2).

### Facts Common to All Counts

15.     InteleCom is a public company traded on pink sheets under the symbol IECM.

16.     InteleCom is working to develop certain technology to allow parallel networking of social network internet sites.

17.     On November 8, 2007, InteleCom President Mike Connor was introduced via interstate telephone call to Mr. Mongello.  Mr. Mongello represented to InteleCom (via Mr. Connor) that he could raise working capital for InteleCom for its parallel networking project by listing the company on the Frankfurt Stock Exchange in Germany and that he knew of a large trust firm that would invest at least One Million dollars ($1,000,000.00) to such a venture.

18.     Mr. Mongello and InteleCom executed a Non-Circumvention Agreement ("NCA") on November 9, 2007.  A true and accurate copy of the Non-Circumvention Agreement is attached hereto as Exhibit A and incorporated herein by reference.  The NCA was executed and exchanged via interstate wires.

19.     Mr. Mongello represented his contact information to be 1380 Garnet Avenue, San Diego, California  92109, (619) 330-4516, dom4biz@gmail.com.  Upon information and belief,

4

Mr. Mongello is currently residing or staying in Thailand at 388/171 Suksabi Villa, Pattay Beach, Thailand 20150. Mr. Mongello has also used an email address of dom@eyeblob.com.

20.   On November 9, 2007, Mr. Mongello sent InteleCom a Purchase Agreement between InteleCom and SSI and Sigma Trust by Swiss Independent Trustees. This Purchase Agreement was executed on November 13, 2007 and was executed and exchanged via interstate wires. Mr. Mongello signed the Purchase Agreement on behalf of SSI/Sigma Trust/Swiss Independent Trustees purportedly as "Appointed Trustee for the purposes of this (IECM) transaction." A true and accurate copy of the Purchase Agreement is attached hereto as Exhibit B and is fully incorporated herein by reference.

21.   Pursuant to the Purchase Agreement SSI agreed to purchase 5,714,286 shares of InteleCom registered shares pursuant to Regulation S in exchange for One Million Two Hundred Thousand dollars ($1,200,000.00). InteleCom agreed to deliver the shares and SSI was to pay InteleCom within forty (40) days of receiving the shares. The Purchase Agreement states, "In the event that SSI fails to deliver 1,200,000 USD to IECM [InteleCom] in 40 days SSI agrees to return the un-sold shares to IECM [InteleCom]."

22.   On November 13, 2007, Mr. Mongello directed InteleCom, via interstate email, to send the stock certificates to Dick Galloway, 2014 Chicago Street, San Diego, California 92110, (858) 581-6262. The telephone number belongs to Grant F. Galloway. Dick Galloway is Grant Galloway's father.

23.   InteleCom delivered the shares to SSI on November 15, 2007.

24.   Contemporaneously with the execution of the Purchase Agreement, SSI and InteleCom also executed a "Letter of Understanding." This LOU was exchanged and executed via

interstate wires. A true and accurate copy of the LOU is attached hereto as Exhibit C and is incorporated herein by reference.

25. The LOU purports to memorialize the parties' understanding of the structure of the transaction. The LOU states that the 5,714,286 InteleCom shares will be sold and traded on the Frankfort Stock Exchange. It further states that InteleCom is to receive from White Label, LLC (a company purportedly owned in part by Mr. Mongello) certain software related to InteleCom's parallel networking project and "White Label, LLC chooses to be paid simultaneously with IECM [InteleCom] by Sigma Securities, Inc., the company instituting the purchase." The LOU contemplates at Two Million dollar ($2,000,000.00) transaction whereby SSI would pay InteleCom One Million Two Hundred Thousand dollars ($1,200,000.00) in exchange for stock, Five Hundred Thousand dollars ($500,000.00) for a "25% Discount Fee" (fee to financial partners for their part in the transaction) and Three Hundred Thousand dollars ($300,000.00) to White Label to purchase the software and licensing rights. Mr. Mongello signed this LOU on behalf of SSI/Sigma Trust and directed that InteleCom fax or email the executed LOU to him via interstate wires.

26. Mr. Mongello represented to InteleCom that his company, White Label, would develop certain software that would be compatible with InteleCom's service and would enable InteleCom's customers to have a free universal communicator and social network pages. Mr. Mongello also represented to InteleCom that White Label would provide InteleCom with a premium Voice/Video Communication product for InteleCom to sell.

27. Mr. Mongello demanded additional fees in relation to the work to be done by White Label on top of those fees represented in the LOU. Mr. Mongello asked that InteleCom

deliver to him 150,000 InteleCom shares as a down payment so he could start the development of the Beta Platform and Beta Video Chat product.

28. On November 14, 2007, InteleCom delivered 145,834 free trading shares to Mr. Mongello.

29. On December 20, 2007, Mr. Mongello demanded an additional 100,000 shares of InteleCom stock purportedly because of delays in his receipt of funds from the SSI shares that were to be traded on the Frankfort Stock Exchange.

30. InteleCom delivered 96,362 shares to Mr. Mongello's Trust, Miracles R Us Holding on December 27, 2007.

31. In early February 2008, Grant F. Galloway telephoned InteleCom via interstate wires and spoke to John A. Roberts, Jr., Chairman and CEO of InteleCom.  Mr. Galloway represented to InteleCom that he was an investor relations specialist and representative of SSI. He represented that he had set up the deal with Mr. Mongello for SSI for the sale of InteleCom shares on the Frankfort Stock Exchange.  Mr. Galloway further represented that he was an international financier who arranged for U.S. companies to be listed on the Frankfort Stock Exchange and performed consulting services to promote stock on the U.S. exchanges.  Mr. Galloway represented to InteleCom that he needed to get the InteleCom stock price up to $1.00 or $1.50 in order to proceed with the Frankfort Stock Exchange sale.  Mr. Galloway represented to InteleCom that the InteleCom shares that had been delivered to SSI were currently held with a broker in London. He represented that InteleCom needed to execute an agreement with his company, F.G. Management, because he had institutional investors lined up to purchase InteleCom stock based on the software that Mr. Mongello and White Label were purportedly working on.   Mr.

7

Galloway represented that he was a managing director of F.G. Management and of SSI/Sigma Trust. He represented that the contact information for F.G. Management, Inc. was 5427 La Jolla Blvd., La Jolla, California 92037, 1-888-581-6262.

32.  On October 26, 2007, Mr. Galloway registered the domain name of "www.sigmacapitaltrust.com" using the address of P.O. Box 99800, Emoryville, California 94662.

33.  On October 19, 2007, Mr. Billy Bateman, Mr. Mongello's partner in White Label, created the Domain name of "www.whitelbl.com" for White Label, LLC, 10033 S. Ross Avenue, Oklahoma City, OK, 73159, Telephone Number 405-692-4688, email address, email address, Billy.Bateman@whitelbl.com.

34.  Mr. Galloway uses gfg@sigmacapitaltrust.com as his email address.

35.  On February 6, 2008, InteleCom executed an agreement with F.G. Management. A true and accurate copy of that agreement is attached hereto as Exhibit D and incorporated herein by reference.

36.  As part of the arrangement with F.G. Management, InteleCom delivered 175,000 shares of InteleCom free trading shares to Mr. Galloway on February 12, 2008. These shares were delivered to National Securities, 4570 Campus Drive, Suite 10, Newport Beach, California 92660 at the direction of Mr. Galloway. The DTC instructions for this transaction were DTC # 0052, Acct.: F.G. Management, Acct. # 5617-3316.

37.  On February 7, 2008, Mr. Mongello demanded an additional 100,000 shares of InteleCom stock.

38.  InteleCom delivered 100,000 shares to Mr. Mongello's trust, Miracles R Us Holding on February 21, 2008.

8

39.    On February 26, 2008, Mr. Galloway informed InteleCom that his account at National
       Securities had been frozen by the SEC because of his participation in an investment deal
       with Xynergy Corporation because the SEC was investigating that company.    Mr.
       Galloway requested that InteleCom deliver to him an additional 150,000 shares so he
       could continue to work on behalf of InteleCom.   He directed that InteleCom send these
       shares to Scottrade, DTC # 0705, Acct:  Grant Fitzgerald Galloway, Account # 342
       43677.

40.    InteleCom delivered at total of 150,000 shares to Mr. Galloway's Scottrade account.

41.    During the last communication InteleCom had with Mr. Galloway, he represented that he
       would be traveling to Australia via South Africa and would call or email InteleCom on
       March 10, 2008 to resume work.   InteleCom has had no communication from Mr.
       Galloway since March 4, 2008 despite repeated attempts to contact him.

42.    Mr. Galloway is currently in possession of 325,000 shares of InteleCom stock, which,
       upon information and belief, is currently located in Mr. Galloway's Scottrade account
       and F.G. Management's National Securities account.

43.    Upon information and belief, Mr. Galloway has control or possession of the 5,714,286
       shares of InteleCom stock delivered to SSI via Mr. Galloway's father's address in San
       Diego.

44.    On March 3, 2008, Mr. Galloway sent an interstate email to Florida Atlantic and therein
       represented that the 5,714,286 of InteleCom stock delivered to SSI have been lost and
       requested that they be reissued in his name.  Florida Atlantic told Mr. Galloway that he
       would need to obtain a corporate resolution and stock powers in order for Florida
       Atlantic to re-issue the stock in his name.

9

45.   On February 25, 2008, Mr. Mongello demanded an additional 100,000 shares of InteleCom stock.

46.   InteleCom delivered 102,075 shares to Mr. Mongello's Trust, Miracle R Us Holding on March 12, 2008.

47.   Mr. Mongello is currently in possession of approximately 444,271 shares of InteleCom stock which, upon information and belief is held in one of two accounts with Scottsdale Capital associated with Mr. Mongello.  Mr. Mongello directed that stock be delivered to Scottsdale Capital, 5927 Balfour Court, Ste. 102, Carlsbad, California  92008, DTC #0296, Acct: Domonic Mongello, Account # 142722 and DTC # 0297, Acct: Miracles R Us Holding, Account # 142111 (upon information and belief, this is Mr. Mongello's trust account).  Mr. Mongello also directed InteleCom to make delivery to Scottsdale Capital, 7170 E. McDonald Drive, Ste. 6, Scottsdale, Arizona  85253.

48.   As of the filing of this action, SSI/Sigma Trust/Swiss Independent Trustees has failed to pay InteleCom any sum of money.

49.   As of the filing of this action, White Label and/or Mr. Mongello has failed to deliver any product or software to InteleCom despite repeated assurances that delivery was forthcoming in "just another week."

## COUNT I – INJUNCTION

50.   InteleCom incorporates paragraphs 1 through 49 above as if fully set forth herein.

51.   InteleCom has a reasonable or substantial likelihood of success on the merits of this case.

52.   InteleCom has no adequate remedy at law for its claim.

53.    Absent an injunction, InteleCom will suffer irreparable harm.  This irreparable harm outweighs the irreparable harm that Defendants would endure were the injunction granted.

54.    The public interest will be served by an injunction in this case.

## COUNT II – BREACH OF CONTRACT (SSI, Sigma Trust, and Swiss Independent Trustees)

55.    InteleCom incorporates paragraphs 1 through 54 above as if fully set forth herein.

56.    InteleCom entered into a Purchase Agreement with SSI, Sigma Trust and Swiss Independent Trustees on November 13, 2007.

57.    InteleCom fully performed under the terms of this Agreement.

58.    SSI, Sigma Trust and Swiss Independent Trustees breached the Agreement by failing to pay InteleCom pursuant to the terms of the Agreement within forty (40) days of delivery of the InteleCom shares to SSI and by failing to return to InteleCom the shares of stock pursuant to the Agreement.

59.    Because of SSI, Sigma Trust and Swiss Independent Trustee's breach of the contract there has been a complete failure of consideration.

60.    InteleCom seeks rescission of the Agreement and return of all shares of InteleCom stock delivered to SSI.

61.    To the extent any share of InteleCom stock delivered to SSI has been sold to an innocent purchaser for value or cannot otherwise be returned by law, InteleCom has been damaged.

## COUNT III—BREACH OF CONTRACT (White Label and Mr. Mongello)

62.    InteleCom incorporates paragraphs 1 through 61 above as if fully set forth herein.

11

63.    On November 13, 2007, InteleCom executed a Letter of Understanding that memorializes an agreement between InteleCom and White Label and Mr. Mongello for the development, delivery and licensing of certain software and technology. White Label and InteleCom had a contract for the development, delivery and licensing of this certain software and technology.

64.    According to the terms of the LOU and the Purchase Agreement, InteleCom advanced 444,271 shares of InteleCom stock to Mr. Mongello and/or his Trust, Miracles R Us Holding.

65.    White Label and Mr. Mongello have breached the LOU and Purchase Agreement by failing to provide InteleCom with any funds and/or product and/or software.

66.    Because of White Label and Mr. Mongello's breach of the LOU and Purchase Agreement there has been a complete failure of consideration.

67.    InteleCom seeks rescission of the LOU and Purchase Agreement and return of all shares of InteleCom stock delivered to Mr. Mongello and/or his Trust, Miracles R Us Holding.

68.    To the extent any share of InteleCom stock delivered to Mr. Mongello and/or his Trust, Miracles R Us Holding, has been sold to an innocent purchaser for value or cannot otherwise be returned by law, InteleCom has been damaged.

### COUNT IV – BREACH OF CONTRACT (F.G. Management and Mr. Galloway)

69.    InteleCom incorporates paragraphs 1 through 69 above as if fully set forth herein.

70.    February 6, 2008, InteleCom executed an agreement with F.G. Management.

71.    InteleCom fully performed pursuant to the terms of this agreement by delivering 325,000 shares of InteleCom stock to Mr. Galloway.

12

72.    F.G. Management and Mr. Galloway have breached the agreement by failing to provide
       InteleCom with any services.

73.    Because of F.G. Management and Mr. Galloway's breach of the contract there has been a
       complete failure of consideration.

74.    InteleCom seeks rescission of the Agreement and return of all shares of InteleCom stock
       delivered to Mr. Galloway.

75.    To the extent any share of InteleCom stock delivered to Mr. Galloway has been sold to an
       innocent purchaser for value or cannot otherwise be returned by law, InteleCom has been
       damaged.

## COUNT V – FRAUD (Mr. Mongello and Mr. Galloway)

76.    InteleCom incorporates paragraphs 1 through 76 above as if fully set forth herein.

77.    Mr. Mongello and Mr. Galloway made material representations of past or existing facts,
       more fully set forth above, to InteleCom.

78.    Those representations were false.

79.    Mr. Mongello and Mr. Galloway made those representations with knowledge of their
       falsity or with reckless ignorance of their falsity.

80.    Mr. Mongello and Mr. Galloway made those representations with the intent to deceive
       InteleCom.

81.    InteleCom rightfully relied upon the representations made by Mr. Mongello and Mr.
       Galloway in delivering 6,483,557 shares of InteleCom stock to SSI, Mr. Mongello, and
       Mr. Mongello's Trust, Miracles R Us Holding, Mr. Galloway, and F.G. Management,
       Inc.

13

82.    InteleCom has been proximately injured by the acts of Mr. Mongello and Mr. Galloway by losing possession and control of 6,483,557 shares of InteleCom stock and other damages yet to be determined.

**COUNT VI – THEFT (SSI, Mr. Mongello, and Mr. Galloway)**

83.    InteleCom incorporates paragraphs 1 through 83 above as if fully set forth herein.

84.    SSI, Mr. Mongello and Mr. Galloway knowingly or intentionally exerted and continue to exert unauthorized control over the property of InteleCom, namely 6,483,557 shares of InteleCom stock.

85.    InteleCom has suffered a pecuniary loss as a result of the acts of SSI, Mr. Mongello and Mr. Galloway.

86.    Pursuant to Indiana Code section 34-24-3-1, InteleCom is entitled to treble damages, the costs of this action and reasonable attorney fees.

WHEREFORE, Plaintiff InteleCom, Inc., by counsel, Lewis & Kappes, P.C., respectfully requests that this Court enter judgment in its favor as follows:

1.    Enjoin Defendants from taking any action to sell, transfer, trade, negotiate, or register transfer of any of the 6,483,557 shares of InteleCom stock currently possessed or controlled by SSI, Mr. Mongello, and/or Mr. Mongello's Trust, Miracles R Us Holding, or Mr. Galloway or held in an account by Scottrade, Scottsdale Capital, National Securities or Florida Atlantic.

2.    Order Defendants to return to InteleCom any and all of the 6,483,557 shares of InteleCom stock that are unsold or otherwise currently possessed or controlled by SSI, Mr. Mongello, and/or Mr. Mongello's Trust, Miracles R Us Holding or Mr. Galloway or held in an account by Scottrade, Scottsdale Capital, National Securities or Florida Atlantic.

14

3. Enter judgment in favor of InteleCom for damages in an amount to be determined at trial, including treble damages, costs and attorneys fees associated with damages sustained by a result of theft committed by SSI, Mr. Mongello and Mr. Galloway.

4. All other relief just in the premises.

I, John A. Roberts, Jr., hereby swear or affirm under penalties for perjury, that all of the foregoing allegations of fact are true and correct, and that I am authorized to execute this verification on behalf of Plaintiff, InteleCom, Inc..

Date: *MARCH 31, 2008*          John A. Roberts Jr.

Respectfully submitted,

LEWIS & KAPPES, P.C.

Peter S. French (#16716-49)
Sara R. Bradbury (# 24806-49)
LEWIS & KAPPES, P.C.
One American Square, Ste. 2500
Indianapolis, Indiana 46282
Telephone: (317) 639-1210
Facsimile: (317) 639-4882
pfrench@lewis-kappes.com
sbradbury@lewis-kappes.com

*Attorneys for Plaintiffs*