UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INTELECOM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-CV-00420-SEB-JMS |
| ) | |
| DOMONIC MONGELLO, SIGMA ) | |
| SECURITIES, INC., SIGMA TRUST, ) | |
| SWISS INDEPENDENT TRUSTEES, ) | |
| S.A., WHITE LABEL, LLC, GRANT ) | |
| FITZGERALD GALLOWAY, F.G. ) | |
| MANAGEMENT, INC., NATIONAL ) | |
| SECURITIES, SCOTTRADE, ) | |
| SCOTTSDALE CAPITAL ADVISORS, ) | |
| and FLORIDA ATLANTIC STOCK ) | |
| TRANSFER  COMPANY, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

This matter comes before the Court on Plaintiff InteleCom Inc.'s ("InteleCom") Motion for Preliminary Injunction against all Defendants (Docket No. 12). InteleCom has filed suit against Domonic Mongello, Sigma Securities, Inc., Sigma Trust, Sigma Swiss Independent Trustees, S.A., White Label, LLC, Grant F. Galloway, F.G. Management, Inc., National Securities, Scotttrade, Scottsdale Capital Advisors, and Florida Atlantic Stock Transfer Company. In its Motion for Preliminary Injunction, and through argument of counsel, InteleCom requests that the Court enter a preliminary injunction against each of these Defendants requiring that all shares of InteleCom being held by Defendants, wherever located, be returned to the Company to be held in trust pending a trial on the merits of this dispute.

The Court has considered Plaintiff's Verified Complaint (Docket No.1), Plaintiff's Motion for Preliminary Injunction (Docket No.12), Plaintiff's Memorandum of Law in Support

of Motion for Preliminary Injunction (Docket No.13) and evidence and argument of counsel submitted at hearings held on April 7, 2008 and April 17, 2008. Having considered such matters, and being duly advised in the premises, the Court now enters the following specific findings of fact and conclusions of law.

## FINDINGS OF FACT

1. InteleCom is a Nevada corporation with its principal place of business in Indianapolis, Indiana.

2. Domonic Mongello is an individual U.S. citizen with a last known address in California who is believed to reside in Thailand. This Court has specific personal jurisdiction over Mr. Mongello based on his conduct in this case which is set forth in more detail below.

3. Sigma Securities, Inc., is a British Virgin Islands corporation. This Court has specific personal jurisdiction over SSI based on its conduct in this case which is set forth in more detail below.

4. Sigma Trust is a discretionary trust organized under the laws of Jersey under a trust agreement dated July 26, 2004 with a principal address in Geneva, Switzerland. This Court has specific personal jurisdiction over Sigma Trust based on its conduct in this case which is set forth in more detail below.

5. Swiss Independent Trustees, S.A. is organized under the laws of Switzerland with a principal address in Geneva, Switzerland. Swiss Independent Trustees is the trustee for Sigma Trust with the power to vote and direct the disposition of Shares held directly or indirectly by the Trust. This Court has specific personal jurisdiction over Swiss Independent Trustees based on its conduct in this case which is set forth in more detail below.

6. White Label, LLC, is a company owned by Mr. Mongello and Billy Bateman. Its domiciliary is unknown and its primary place of business is 10033 S. Ross Avenue, Oklahoma City, OK 73159. This Court has specific personal jurisdiction over White Label based on its conduct in this case which is set forth in more detail below.

7. Grant Fitzgerald Galloway is an individual with a last known address in California. This Court has specific personal jurisdiction over Mr. Galloway based on his conduct in this case which is set forth in more detail below.

8. F.G. Management, is owned by Mr. Galloway. Its domiciliary is unknown at this time, but with a last known address in California. This Court has specific personal jurisdiction over F.G. Management based on its conduct in this case which is set forth in more detail below.

9. National Securities is a Washington Corporation that is an affiliate of National Holdings Corporation, a Delaware corporation. National Securities is registered to do business in Indiana. This Court has general personal jurisdiction over National Securities.

10. Scottrade is a financial institution with its headquarters in St. Louis, Missouri. Scottrade does general business in the Southern District of Indiana

11. Scottsdale Capital Advisors is an Arizona Corporation with its principal place of business in Scottsdale, Arizona.

12. Florida Atlantic Stock Transfer Company is a Florida Corporation doing business in Indiana. Florida Atlantic is InteleCom's transfer agent

**Facts Common to All Counts**

13. InteleCom is a public company traded on pink sheets under the symbol IECM.

14. InteleCom is working to develop certain technology to allow parallel networking of social network internet sites.

15. On November 8, 2007, InteleCom President Mike Connor was introduced via interstate telephone call to Mr. Mongello. Mr. Mongello represented to InteleCom (via Mr. Connor) that he could raise working capital for InteleCom for its parallel networking project by listing the company on the Frankfurt Stock Exchange in Germany and that he knew of a large trust firm that would invest at least One Million dollars ($1,000,000.00) to such a venture.

16. Mr. Mongello and InteleCom executed a Non-Circumvention Agreement ("NCA") on November 9, 2007. The NCA was executed and exchanged via interstate wires.

17. Mr. Mongello represented to InteleCom that his contact information was 1380 Garnet Avenue, San Diego, California 92109, (619) 330-4516, dom4biz@gmail.com. Plaintiff believes Mr. Mongello is currently residing or staying in Thailand at 388/171 Suksabi Villa, Pattay Beach, Thailand 20150. Mr. Mongello has also used an email address of dom@eyeblob.com.

18. On November 9, 2007, Mr. Mongello sent InteleCom a Purchase Agreement between InteleCom and SSI and Sigma Trust by Swiss Independent Trustees. This Purchase Agreement was executed on November 13, 2007 and was executed and exchanged via interstate wires. Mr. Mongello signed the Purchase Agreement on behalf of SSI/Sigma Trust/Swiss Independent Trustees purportedly as "Appointed Trustee for the purposes of this (IECM) transaction.

19. Pursuant to the Purchase Agreement SSI agreed to purchase 5,714,286 shares of InteleCom registered shares pursuant to Regulation S in exchange for One Million Two Hundred Thousand dollars ($1,200,000.00). InteleCom agreed to deliver the shares and SSI was to pay InteleCom within forty (40) days of receiving the shares. The Purchase Agreement states, "In

the event that SSI fails to deliver 1,200,000 USD to IECM [InteleCom] in 40 days SSI agrees to return the un-sold shares to IECM [InteleCom]."

20.   On November 13, 2007, Mr. Mongello directed InteleCom, via interstate email, to send the stock certificates to Dick Galloway, 2014 Chicago Street, San Diego, California 92110, (858) 581-6262. The telephone number belongs to Grant F. Galloway. Dick Galloway is Grant Galloway's father.

21.   InteleCom delivered the shares to SSI on November 15, 2007.

22.   Contemporaneously with the execution of the Purchase Agreement, SSI and InteleCom also executed a "Letter of Understanding." This LOU was exchanged and executed via interstate wires.

23.   The LOU purports to memorialize the parties' understanding of the structure of the transaction. The LOU states that the 5,714,286 InteleCom shares will be sold and traded on the Frankfort Stock Exchange. It further states that InteleCom is to receive from White Label, LLC (a company purportedly owned in part by Mr. Mongello) certain software related to InteleCom's parallel networking project and "White Label, LLC chooses to be paid simultaneously with IECM [InteleCom] by Sigma Securities, Inc., the company instituting the purchase." The LOU contemplates at Two Million dollar ($2,000,000.00) transaction whereby SSI would pay InteleCom One Million Two Hundred Thousand dollars ($1,200,000.00) in exchange for stock, Five Hundred Thousand dollars ($500,000.00) for a "25% Discount Fee" (fee to financial partners for their part in the transaction) and Three Hundred Thousand dollars ($300,000.00) to White Label to purchase the software and licensing rights. Mr. Mongello signed this LOU on behalf of SSI/Sigma Trust and directed that InteleCom fax or email the executed LOU to him via interstate wires.

24. Mr. Mongello represented to InteleCom that his company, White Label, would develop certain software that would be compatible with InteleCom's service and would enable InteleCom's customers to have a free universal communicator and social network pages. Mr. Mongello also represented to InteleCom that White Label would provide InteleCom with a premium Voice/Video Communication product for InteleCom to sell.

25. Mr. Mongello demanded additional fees in relation to the work to be done by White Label on top of those fees represented in the LOU. Mr. Mongello asked that InteleCom deliver to him 150,000 InteleCom shares as a down payment so he could start the development of the Beta Platform and Beta Video Chat product.

26. On November 14, 2007, InteleCom delivered 145,834 free trading shares to Mr. Mongello.

27. On December 20, 2007, Mr. Mongello demanded an additional 100,000 shares of InteleCom stock purportedly because of delays in his receipt of funds from the SSI shares that were to be traded on the Frankfort Stock Exchange.

28. InteleCom delivered 96,362 shares to Mr. Mongello's purported trust, Miracles R Us Holding on December 27, 2007.

29. In early February 2008, Grant F. Galloway telephoned InteleCom via interstate wires and spoke to John A. Roberts, Jr., Chairman and CEO of InteleCom. Mr. Galloway represented to InteleCom that he was an investor relations specialist and representative of SSI. He represented that he had set up the deal with Mr. Mongello for SSI for the sale of InteleCom shares on the Frankfort Stock Exchange. Mr. Galloway further represented that he was an international financier who arranged for U.S. companies to be listed on the Frankfort Stock Exchange and performed consulting services to promote stock on the U.S. exchanges. Mr.

Galloway represented to InteleCom that he needed to get the InteleCom stock price up to $1.00 or $1.50 in order to proceed with the Frankfort Stock Exchange sale. Mr. Galloway represented to InteleCom that the InteleCom shares that had been delivered to SSI were currently held with a broker in London. He represented that InteleCom needed to execute an agreement with his company, F.G. Management, because he had institutional investors lined up to purchase InteleCom stock based on the software that Mr. Mongello and White Label were purportedly working on. Mr. Galloway represented that he was a managing director of F.G. Management and of SSI/Sigma Trust. He represented that the contact information for F.G. Management, Inc. was 5427 La Jolla Blvd., La Jolla, California 92037, 1-888-581-6262.

30. On October 26, 2007, Mr. Galloway registered the domain name of "www.sigmacapitaltrust.com" using the address of P.O. Box 99800, Emoryville, California 94662.

31. On October 19, 2007, Mr. Billy Bateman, Mr. Mongello's partner in White Label, created the Domain name of "www.whitelbl.com" for White Label, LLC, 10033 S. Ross Avenue, Oklahoma City, OK, 73159, Telephone Number 405-692-4688, email address, email address, Billy.Bateman@whitelbl.com.

32. Mr. Galloway uses gfg@sigmacapitaltrust.com as his email address.

33. On February 6, 2008, InteleCom executed an agreement with F.G. Management.

34. As part of the arrangement with F.G. Management, InteleCom delivered 175,000 shares of InteleCom free trading shares to Mr. Galloway on February 12, 2008. These shares were delivered to National Securities, 4570 Campus Drive, Suite 10, Newport Beach, California 92660 at the direction of Mr. Galloway. The DTC instructions for this transaction were DTC # 0052, Acct.: F.G. Management, Acct. # 5617-3316.

35. On February 7, 2008, Mr. Mongello demanded an additional 100,000 shares of InteleCom stock.

36. InteleCom delivered 100,000 shares to Mr. Mongello's trust, Miracles R Us Holding on February 21, 2008.

37. On February 26, 2008, Mr. Galloway informed InteleCom that his account at National Securities had been frozen by the SEC because of his participation in an investment deal with Xynergy Corporation because the SEC was investigating that company. This representation was false. Mr. Galloway then requested that InteleCom deliver to him an additional 150,000 shares so he could continue to work on behalf of InteleCom. He directed that InteleCom send these shares to Scottrade, DTC # 0705, Acct: Grant Fitzgerald Galloway, Account # 342 43677.

38. InteleCom delivered at total of 150,000 shares to Mr. Galloway's Scottrade account.

39. During the last communication InteleCom had with Mr. Galloway, he represented that he would be traveling to Australia via South Africa and would call or email InteleCom on March 10, 2008 to resume work. InteleCom had no communication from Mr. Galloway from March 4, 2008 until the instant litigation was initiated despite repeated attempts to contact him.

40. Mr. Galloway has received a total of 325,000 shares of InteleCom stock, which, upon information and belief, a portion of which is currently located in Mr. Galloway's Scottrade account and F.G. Management's National Securities account. On or about March 3, 2008, Mr. Galloway transferred 150,000 shares to an account identified through Scottrade records as, Citibank NA, A/C 089154, Clearstream Banking, Luxemborg, DTC # 908. The account name is

listed as Ramsey Crookall and Co., Ltd. which upon information and belief, has a principal place of business located on the Isle of Man, British Isles.

41. In addition to the shares delivered to Mr. Galloway detailed in the preceding paragraphs, Mr. Galloway has control or possession of the 5,714,286 shares of InteleCom stock delivered to SSI via Mr. Galloway's father's address in San Diego.

42. On March 3, 2008, Mr. Galloway sent an interstate email to Florida Atlantic and therein represented that the 5,714,286 of InteleCom stock delivered to SSI have been lost and requested that they be reissued in his name. Florida Atlantic told Mr. Galloway that he would need to obtain a corporate resolution and stock powers in order for Florida Atlantic to re-issue the stock in his name.

43. On February 25, 2008, Mr. Mongello demanded an additional 100,000 shares of InteleCom stock.

44. InteleCom delivered 102,075 shares to Mr. Mongello's Trust, Miracle R Us Holding on March 12, 2008.

45. Mr. Mongello is currently in possession or in control of approximately 444,271 shares of InteleCom stock which, upon information and belief are held in one of two accounts with Scottsdale Capital associated with Mr. Mongello. Mr. Mongello directed that stock be delivered to Scottsdale Capital, 5927 Balfour Court, Ste. 102, Carlsbad, California 92008, DTC #0296, Acct: Domonic Mongello, Account # 142722 and DTC # 0297, Acct: Miracles R Us Holding, Account # 142111 (upon information and belief, this is Mr. Mongello's trust account). Mr. Mongello also directed InteleCom to make delivery to Scottsdale Capital, 7170 E. McDonald Drive, Ste. 6, Scottsdale, Arizona 85253.

46. As of the date of this Order, Grant Galloway, FG Management, SSI/Sigma Trust/Swiss Independent Trustees has failed to pay InteleCom any sum of money or provide any services required in the agreements detailed in the preceding paragraphs.

47. As of the date of this Order, Mr. Mongello and/or White Label has failed to deliver any product or software to InteleCom.

## CONCLUSIONS OF LAW

48. Any finding of fact which states a conclusion of law is hereby deemed to be a conclusion of law, and any conclusion of law which states a finding of fact is hereby deemed to be a finding of fact.

49. Any conflict in the evidence has been resolved by the Court in its capacity as the finder of fact.

50. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332. The amount in controversy in this case exceeds $75,000.00.

51. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a)(2).

52. The standard for granting a preliminary injunction is well-established. In order to obtain preliminary injunctive relief, a moving party must demonstrate: (1) that it is reasonably likely to succeed on the merits; (2) that there is no adequate remedy at law; (3) it is suffering irreparable harm that outweighs any potential harm to the nonmovant if the injunction is granted; and (4) the public interest would not be harmed by an injunction. *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

53. Once a party moving for preliminary injunction shows it has a reasonable likelihood of success on the merits of its case, it will suffer irreparable harm if its request for injunction is denied and that there is an inadequacy of any remedy at law, then the court balances

the hardship to the moving party absent an injunction with the hardship to the non-moving party with an injunction and considers the impact of an injunction on the public interest. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Sierra Club v. Gates*, 499 F. Supp. 2d 1101, 1126 (S.D. Ind. 2007).

54.     The balance of harms analysis is viewed on a "sliding scale" such that the greater the moving party's likelihood of success on the merits, the less strongly it must show that the balance of harms favors it. *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004) (balance of harms viewed on "sliding scale"); *Sierra Club*, 499 F. Supp. 2d at 1126. In this case, all factors favor granting preliminary injunction.

55.     InteleCom asserts claims for breach of contract against Defendants SSI, Sigma Trust, Swiss Independent Trustees, Mr. Mongello, White Label, F.G. Management and Mr. Galloway. InteleCom further asserts claims for fraud and theft against Mr. Mongello and Mr. Galloway. The facts of this case show that InteleCom entered into various contracts with these Defendants for services and payment and that no such services or payment has ever been delivered. It is Counts II, III and IV of Plaintiff's Verified Complaint that give rise to InteleCom's right to have the stock at issue in this case returned.

56.     The contract between InteleCom and SSI/Sigma Trust/Swiss Independent Trustees provides that should SSI/Sigma Trust/Swiss Independent Trustees fail to pay InteleCom $1.2 Million within forty (40) days of InteleCom's delivery of stock to those parties that the stock will be returned. More than forty (40) days have passed since InteleCom issued stock under that contract and no payment has been made. Accordingly, InteleCom is entitled to the return of that stock. InteleCom is therefore reasonably likely to succeed on the merits of Count II of its Verified Complaint.

57. With respect to the remaining InteleCom shares at issue in this case, the evidence reasonably shows that there has been a complete failure of consideration for those shares. Mr. Mongello, White Label, Mr. Galloway and F.G. Management have delivered nothing by way of product or services to InteleCom pursuant to their respective agreements. These parties now appear to have abandoned the venture altogether. This conduct clearly constitutes breach of the agreements, *Harrison v. Thomas*, 761 N.E.2d 816, 819 (Ind. 2002) (when no time for performance is specified the law implies a reasonable time for performance based upon the subject matter of the contract and the attendant circumstances and situation), *Ralph E. Koressel Premier Elec., Inc. v. Forster*, 838 N.E.2d 1037, 1045 (Ind. Ct. App. 2005) (anticipatory breach is a positive, absolute and unconditional abandonment), and InteleCom is entitled to rescind the agreements because of the complete failure of consideration, *Smeekens v. Bertrand*, 311 N.E.2d 431, 435 (Ind. 1974); *Van Bibber Home Sales v. Marlow*, 778 N.E.2d 852, 857-58 (Ind. Ct. App. 2002).

58. No adequate remedy at law exists with respect to counts II-IV of InteleCom's Verified Complaint even though these are breach of contract claims. Although this stock has a monetary value, monetary damages are not an adequate substitute for the return of the actual stock because that stock represents an ownership interest in the company and the circumstances under which InteleCom believed it was granting such an interest are not the actual circumstances now existing. Furthermore, the circumstances of this case, namely the international connections of many of the Defendants in this case reasonably suggest that InteleCom will never be able to receive monetary compensation for its losses. As such, legal remedy is inadequate under the facts of this case and InteleCom will suffer irreparable harm absent injunction.

59. The balance of harms in this case strongly favors InteleCom. Because InteleCom has a significant likelihood of success on the merits, the "sliding scale" of the balancing test does not require as strong a showing on the balance of harms analysis as it would otherwise. *Joelner*, 378 F.3d at 619 (balance of harms viewed on "sliding scale"); *Sierra Club*, 499 F. Supp. 2d at 1126. The broker and transfer agent Defendant will not suffer harm by an injunction because the court order itself will protect them from claims of wrongful conduct in "freezing" the accounts and shares.

60. Public interest favors injunction in this case. The "public interest" factor simply means the "effects the court's decision will have on non-parties." *Eco Mfg. LLC v. Honeywell Intern., Inc.*, 295 F. Supp. 2d 854, 864-65 (S.D. Ind. 2003). There will likely be minimal to no impact on non-parties by an injunction in this case. The parties to this action are the only parties with an interest herein. Furthermore, public interest is served by discouraging fraudulent conduct and preventing parties from profiting from deceitful acts.

61. The Court has the authority to require the return or prevent the transfer of shares as provided by the Indiana's Codification of the Uniform Commercial Code. Indiana Code 26-1-8.1-202 (Terms of security; rules on validity; issuer's defenses; cancellation of contracts) section (e) provides in relevant part: "This section does not affect the right of a party to cancel a contract for a security "when, as, and if issued" or "when distributed" in the event of a material change in the character of the security that is the subject of the contract or in the plan or arrangement under which the security is to be issued or distributed." The evidence shows that there has been a complete failure of performance under the arrangements made between InteleCom, Mr. Galloway, Mr Mongello and each person's various purported companies, trusts, and entities. InteleCom seeks to cancel these contracts and is entitled to the same for reasons set forth above.

62.     Further, Indiana Code 26-1-8.1-403 gives InteleCom the authority to demand that transfer not be registered with respect to the 5.7 million shares and their certificates whose whereabouts are unknown at this time.  Section (d) provides that a person wishing to prevent the registration of transfer (after specified communications and notice) "obtain an appropriate restraining order, injunction or other process from a court of competent jurisdiction  enjoining the issuer from registering transfer."   While the UCC does not specifically address the situation in the instant controversy, it provides the means by which contracts or agreements are cancelled as well as the procedure for preventing transfer.

## **PRELIMINARY INJUCTION ENTRY AND ORDER**

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants are hereby ENJOINED from taking the following actions or in the alternative ORDERED to take the following actions:

1.     **DOMONIC MONGELLO**

Defendant Domonic Mongello is hereby ENJOINED from selling, trading, transferring, registering transfer or taking any other action to otherwise dispose of any InteleCom stock in his possession and/or control.  Defendant Mongello is further ORDERED, to return any outstanding shares of InteleCom (IECM) in his possession and/or control and forward any and all proceeds from the sale of said shares to InteleCom through appropriate and secure means without undue delay.

Defendant Mongello is directed to take affirmative measures to assist in the recovery of InteleCom stock and/or certificates wherever located either domestically (within the United States) or internationally.  Any and all information necessary in furtherance of this Order, should

it be necessary for the return of stock and/or certificates, shall be provided by Defendant Mongello. Refusal to cooperate with the Order of the Court may result in sanctions or other consequences the Court deems appropriate in the event of non-compliance.

      2.    **GRANT FITZGERALD GALLOWAY**

Defendant Grant Fitzgerald Galloway is hereby ENJOINED from selling, trading, transferring, registering transfer or taking any other action to otherwise dispose of any InteleCom stock in his possession and/or control. Defendant Galloway is further ORDERED, to return any outstanding shares of InteleCom (IECM) in his possession and/or control and forward any and all proceeds from the sale of said shares to InteleCom through appropriate and secure means without undue delay.

Defendant Galloway is directed to take affirmative measures to assist in the recovery of InteleCom stock and/or certificates wherever located either domestically (within the United States) or internationally. Any and all information necessary in furtherance of this Order, should it be necessary for the return of stock and/or certificates, shall be provided by Defendant Galloway. Refusal to cooperate with the Order of the Court may result in sanctions or other consequences the Court deems appropriate in the event of non-compliance.

      3.    **SIGMA SECURITIES, INC., SIGMA TRUST, SWISS INDEPENDENT TRUSTEES, S.A.,**

Defendants Sigma Securities, Inc., Sigma Trust, Swiss Independent Trustees, S.A., are hereby ENJOINED from selling, trading, transferring, registering transfer or taking any other action to otherwise dispose of any InteleCom stock in their possession and/or control. Defendants Sigma Securities, Inc., Sigma Trust, Swiss Independent Trustees, S.A., are further ORDERED, to return any outstanding shares of InteleCom (IECM) in their possession and/or

control and forward any and all proceeds from the sale of said shares to InteleCom through appropriate and secure means without undue delay.

4. **WHITE LABEL, LLC**

Defendant White Label, LLC is hereby ENJOINED from selling, trading, transferring, registering transfer or taking any other action to otherwise dispose of any InteleCom stock in their possession and/or control. Defendant White Label, LLC is further ORDERED, to return any outstanding shares of InteleCom (IECM) in their possession and/or control and forward any and all proceeds from the sale of said shares to InteleCom through appropriate and secure means without undue delay.

5. **FG MANAGEMENT**

Defendant FG Management is hereby ENJOINED from selling, trading, transferring, registering transfer or taking any other action to otherwise dispose of any InteleCom stock in their possession and/or control. Defendant FG Management is further ORDERED, to return any outstanding shares of InteleCom (IECM) in their possession and/or control and forward any and all proceeds from the sale of said shares to InteleCom through appropriate and secure means without undue delay.

6. **NATIONAL SECURITIES**

Defendant, National Securities is hereby ORDERED to return all shares of InteleCom stock (IECM) currently held in account number **5617-3316 (**account name "**FG Management, Inc.")** These shares are to be returned to InteleCom through appropriate and secure means. These shares are to be held in the InteleCom depository until these matters have been resolved upon their merits.

7. **SCOTTRADE**

Defendant, Scottrade is hereby ORDERED to return all shares of InteleCom stock (IECM) currently held in account number **34243677** (account name "**Grant Fitzgerald Galloway**")  These shares are to be returned to InteleCom through appropriate and secure means.  These shares are to be held in the InteleCom depository until these matters have been resolved upon their merits.

8. **SCOTTSDALE CAPITAL ADVISORS**

Defendant, Scottsdale Capital Advisors is hereby ORDERED to return all shares of InteleCom stock (IECM) currently held in account number **2204142722** (account name "**Domonic Mongello**")  These shares are to be returned to InteleCom through appropriate and secure means.  These shares are to be held in the InteleCom depository until these matters have been resolved upon their merits.

Defendant, Scottsdale Capital Advisors is hereby ORDERED to return all shares of InteleCom stock (IECM) currently held in account number **2204142111** (account name "**Miracles R Us Holding**")  These shares are to be returned to InteleCom through appropriate and secure means.  These shares are to be held in the InteleCom depository until these matters have been resolved upon their merits.

SO ORDERED

Date: April 22, 2008

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

<u>Copies to:</u>

Peter S. French
Randall D. Rogers, Jr.
LEWIS & KAPPES, P.C.
pfrench@lewis-kappes.com
rrogers@lewis-kappes.com